**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

**v.** **Case No. 6:26-cr-158-GAP-NWH**

**CHRISTOPHER ALEXANDER DELGADO**

## UNITED STATES' *TIME-SENSITIVE* CONSENT MOTION FOR INTERLOCUTORY SALE OF PERSONAL PROPERTY

The United States moves this Court for an order authorizing the immediate interlocutory sale of the bulk of the luxury personal property identified in the Plea Agreement, (Doc. 52 pg. 11-20), pursuant to Fed. R. Crim. P. 32.2(b)(7) and Fed. R. Civ. P. Supp. Forfeiture R. G(7). Christopher Alexander Delgado consents to this motion.

The United States respectfully requests that the Court treat this motion as time-sensitive so that Delgado may promptly execute the sale contracts with the auction house, which can then take custody of and prepare the personal property for auction. Expedited consideration will help preserve the property's value and avoid delays in the interlocutory sale process. The auction house believes that selling the luxury goods during its annual December luxury week will maximize their sales price. To accomplish this, the auction house needs to schedule a team to travel to Orlando and transport the property to New York not later than November 3, 2027. The United States, therefore, respectfully requests a ruling by October 27, 2026. In support of this motion the United States submits the following memorandum of law.

# MEMORANDUM OF LAW

## I. Procedural History

### A. Allegations Against the Defendant

1. Delgado was charged by Information with wire fraud conspiracy, in violation of 18 U.S.C. § 1349 (Count One), wire fraud in violation of 18 U.S.C. § 1343 (Count Two) and money laundering in violation of 18 U.S.C. § 1957 (Count Three). Doc. 49.

2. The Information also contained forfeiture allegations putting him on notice that, under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the United States would seek at least $250 million, which represents the proceeds Delgado obtained from the wire fraud scheme charged in Counts One and Two, and numerous real and personal properties. *Id.* at 7-20.

### B. Finding of Guilt and Admissions Related to Forfeiture

3. Delgado pleaded guilty as charged in the Information. Docs. 63, 67. The Court accepted his plea and adjudicated him guilty. Doc. 72.

4. In his Plea Agreement, Delgado agreed to the forfeiture of all forfeitable property, including "all personal property purchased with fraud proceeds, including clothing, shoes, handbags, luggage, home furnishings and decor, jewelry, wine, spirits, and other luxury goods, including ***but not limited to***" a list that spanned ten pages. Doc. 52. at 8-9, 11-20 (emphasis added). As reflected in the plea language, the extensive list of property that follows includes the most valuable items but was not

exhaustive. With Delgado's consent, the IRS has custody of hundreds of items of personal property.

5. The parties have had extensive discussions about how best to maximize the value of the personal property and agreed that an interlocutory sale was preferrable to a post-forfeiture sale because of the scope and value of the personal property and the sentencing date. The sale proceeds will be sent directly to the IRS and can be forfeited in place of the property that was sold.

6. As the Court is aware, much of the most valuable personal property was located in the United Arab Emirates (UAE). The United States retained counsel in the UAE to facilitate the repatriation of the items to the United States, which has been delayed because of regional instability and Iranian bombing as well as coordination with UAE Customs. The items arrived in the United States on October 13, 2026. The parties were unable to finalize any sale plans until those items were repatriated.

7. The United States has solicited proposals from three national auction houses, two local auction companies, as well as multiple specialty handbag resellers and licensed federal firearms dealers. Christie's, an internationally recognized luxury auction house with dedicated departments spanning dozens of categories, including handbags and accessories, jewelry, and watches, submitted the most favorable

proposal. Christie's will sell the majority of the personal property[1] on significantly more favorable financial terms than the other proposals received or any existing government contract;[2] Delgado will not incur any costs for Christie's to pack and transport the items and the United States will receive significantly more of the total price paid by the buyer than under any other proposal. Christie's also markets to the broadest possible customer base. As a result, the parties anticipate a larger recovery than the government would receive post-forfeiture for the most expensive personal property subject to forfeiture. And that recovery will be available more quickly.

8. Christie's will prepare the property for sale by arranging for its secure collection, packing, transportation, and storage. Upon receipt, Christie's specialists will conduct inventorying, condition review, price valuation, photography, and cataloguing. Christie's will market the property through a coordinated campaign that may include press outreach, digital advertising, targeted communication with prospective buyers, exhibition of selected highlights, and promotion through Christie's global client network and related sales channels. Depending on the nature of the property, items may be offered through live or online auction sale channels. Christie's will oversee the sale process through settlement and remittance of net

---

[1] Christie's will make a final determination of which luxury items it will sell based upon physical inspection. The parties are working to finalize a plan for the remaining personal property—primarily less expensive jewelry and handbags, household goods, used clothing and shoes, cigars, and memorabilia.

[2] The precise terms of Christie's proposal is proprietary, which is why the details are not outlined here. However, the United States can provide an *in camera* copy for the Court's inspection if requested.

proceeds pursuant to the terms approved by the Court. The net proceeds of the sales would be paid directly to the Internal Revenue Service. The parties agree that the United States could then deduct the costs it incurred to secure the Dubai assets and transport the personal property to the United States. All remaining funds would be subject to forfeiture as the substitute *res.*

9. The United States and Delgado have been contacted by individuals interested in purchasing Delgado's personal property. The level of interest further supports the parties' belief that it is advantageous to sell the personal property as soon as practicable.

## II. <u>Legal Analysis</u>

Federal Rule of Criminal Procedure 32.2(b)(7) provides: "At any time before entry of a final forfeiture order, the court, in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure, may order the interlocutory sale of property alleged to be forfeitable." Fed. R. Crim. P. 32.2(b)(7).[3] As relevant here, Supplemental Rule G(7)(i)(D) of the Federal Rules of Civil Procedure authorizes the Court to order the interlocutory sale of forfeitable property for "good cause." Supplemental Rule G(7)(ii) further provides that the sale must be conducted by a

[3] The Court also has authority to enter an interlocutory sale order under 21 U.S.C. § 853(e), which authorizes the court to "take any ... action to preserve the availability of property" subject to forfeiture. *See United States v. Youssef*, 734 F. Supp. 3d 638, 640–643 (E.D. Mich. 2024) ("The Court's authority to order the interlocutory sale of property subject to criminal forfeiture is derived, among other sources, from 21 U.S.C. § 853(e)" and "the Federal Rules of Criminal Procedure's forfeiture provisions," specifically Rule 32.2(b)(7)).

United States agency that has authority to sell the property, by the agency's contractor, or by any person the court designates. Here, because the defendant owns the personal property and consents, the United States requests that the Court authorize him to sign the sales contracts with Christie's, which provides that all sale proceeds be transferred directly to the IRS pending forfeiture.

Interlocutory sales are governed by 28 U.S.C. §§2001, 2002, and 2004, unless all parties, with the court's approval, agree otherwise. *See* Supplemental Rule G(7)(iii). Rule G(7) affords the district court a wide degree of latitude in making the decision of whether to order an interlocutory sale. *See U.S. v. Real Prop. Located at 55 Pub. Square, Cleveland, Ohio*, No. 21-10696, 2022 WL 1549161, *2 (11th Cir. May 17, 2022) (unpublished) ("In certain circumstances, Supplemental Rule G(7) permits the district court to authorize the sale of real property before the forfeiture case is resolved."). When ordering an interlocutory sale, the court "may use other procedures for the sale if all parties…agree to the sale, aspects of the sale, or different procedures." *Id.* (quoting Supp. Rule G(7)(b)(iii)). Here, the parties agree that selling through Christie's and Foxhound Firearms LLC is the best method and will yield the largest, and most expeditious, recovery.

Unlike the interlocutory sales that the Court authorized in the related civil forfeiture case, here, the storage cost is not the primary concern.[4] *See United States v.*

---

[4] The United States would incur costs to have a contractor pack and transport the personal property to a warehouse to be stored until the forfeiture was completed, costs that Christie's will absorb under its proposal. However, that cost savings is small compared to the savings

*Assets Identified in Paragraph One of Verified Complaint,* Case Number: 6:26-cv-1134-AGM-LHP (M.D. Fla.), Docs. 38, 42. Instead, the United States and Delgado agree that auctioning the extensive collection of luxury personal property before his January 2027 sentencing with very favorable terms from an internationally recognized auction house will result in a larger recovery than a post-forfeiture sale. Because the United States Attorney intends to seek permission to use the forfeited funds to pay victims, maximizing the recovery is of paramount importance to the parties.

The net sale proceeds, less the expenses the United States has incurred to secure and repatriate the Dubai assets, will be substitute *res* subject to forfeiture in place of the property. *See* Supplemental Rule G(7)(iv). The net proceeds will be held in an interest-bearing account maintained by the United States pending the conclusion of the forfeiture action. *Id.* Consequently, any third parties with alleged interests in the property are protected against the disposition of the proceeds until the Court holds an ancillary proceeding following sentencing. *See* Fed. R. Crim. P. 32.2(c).

## III. Conclusion

For the above reasons, the United States requests that, under 18 U.S.C. §§ 981(a)(1)(C), 28 U.S.C. § 2461(c), and Fed. R. Crim. P. 32.2(b)(2), the Court enter

---

associated with other contract terms—lower total commissions—and increased visibility due to its international presence and buyers' pool.

an order authorizing the immediate interlocutory sales of the luxury personal property, pursuant to the Supplemental Rule G(7). To accomplish the interlocutory sale, the United States requests that the Court authorize Delgado to enter into the sale contract with Christie's to sell the luxury personal property.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: *s/Anita M. Cream*
ANITA M. CREAM
Assistant United States Attorney
Florida Bar Number 56359
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
(813) 274-6000 – telephone
E-mail: anita.cream@usdoj.gov

*s/Blain A. Goff*
BLAIN A. GOFF
Assistant United States Attorney
Florida Bar Number 0109467
(813) 274-6000 – telephone
E-mail: blain.goff@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system that will send a notice of electronic filing to counsel of record.

*s/Anita M. Cream*
ANITA M. CREAM
Assistant United States Attorney